Filed 1/8/21  P. v. Maloy CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JAMES WARREN MALOY,<br><br>      Defendant and Appellant. | B299938<br><br>Los Angeles County<br>Super. Ct. No. BA057246 |

APPEAL from an order of the Superior Court of Los Angeles County, David V. Herriford, Judge.  Affirmed.

Thomas T. Ono, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

James Warren Maloy appeals from the superior court's order denying his petition under Penal Code section 1170.95.[1] That statute allows certain defendants convicted of murder under a natural and probable consequences theory to petition the court to vacate their convictions and for resentencing. Here, the court properly determined Maloy was not tried for or convicted of murder under the natural and probable consequences doctrine and, accordingly, he is not eligible for resentencing. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

In 1992, the People charged Maloy with the murder of Deena Ford. As the facts of Maloy's crime are irrelevant to our analysis, we summarize them only briefly.[2]

On the night of March 13, 1992, sisters Deena and Katrina Ford were going to Deena's car to get some shoes. Maloy approached from across the street. Before leaving her apartment, Katrina had received a telephone call warning her East Coast Crip gang members were outside and planned to rob her. As Katrina and Deena were discussing this warning outside by Deena's car, a man named James Briggs appeared and asked Maloy what was happening. Maloy said, "Cuz, let's try knocking these bitches out." Maloy, Briggs, and two other men began to chase the women. Deena had a steak knife in her hand and the women tried to get into Deena's car but the men stopped them. Maloy said, "Cuz, get the gat." Briggs pulled a small handgun from his sock, got on top of Deena's car, and shot her in the back as she ran away. (*Maloy I*.)

---

[1] References to statutes are to the Penal Code.

[2] We take these facts from our opinion in Maloy's direct appeal. (*People v. Maloy et al.* (Jan. 19, 1996, B080237) [nonpub. opn.] (*Maloy I*).) (See Evid. Code, § 452, subd. (d).)

In an amended information filed in April 1993, the People added Briggs as a codefendant.  The People alleged Briggs personally used a handgun in the commission of the crime, and that a principal was armed with a handgun in the crime's commission.  In 1993, a jury convicted Maloy of first degree murder and found true the allegation that a principal was armed with a firearm.  The trial court sentenced Maloy to 26 years to life in the state prison (an indeterminate term of 25 to life plus one year for the "principal armed" enhancement).  In January 1996, this court affirmed Maloy's conviction as modified to correct his credits.  (*Maloy I.*)

In December 2009, Maloy filed a petition for a writ of habeas corpus.  Maloy raised a host of issues, from instructional error to due process violations arising from his joint trial with Briggs to "juror bias" to ineffective assistance of counsel.  Maloy attached a number of exhibits to his petition, including portions of the trial transcript of some of the court's instructions to the jury.  In April 2010, the trial court denied the writ petition.

After Senate Bill No. 1437 took effect, Maloy filed on January 9, 2019 a petition for resentencing under section 1170.95.  Using a downloadable form, Maloy checked boxes 2a, 3 and its subparagraphs, 4, 5, and 6.  Box 2a states, "At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine."

Simultaneously with his petition, Maloy filed on January 10, 2019, another petition for a writ of habeas corpus.  Under "Grounds for Relief," Maloy wrote, "Petitioner contends that he is currently serving a sentence that entitles him to be resentenced under SB 1437."  Under "Supporting facts," Maloy wrote, "Petitioner was convicted of first degree murder in 1993 as an aider and abett[o]r.  Petitioner was identified as not being

the killer, who neither intended to kill nor was found to have any culpable mental state.  Please see Exhibit (A) pg. 8."  A page entitled "EXHIBIT A" follows the petition but no exhibit is attached.

On January 23, 2019, the superior court set a "review" date on the resentencing petition for March 11.  On March 5, 2019, the district attorney filed a request for more time to file a response to the petition.  The court granted the request and extended the time for a response to April 30.  At some point, the court appointed the public defender to represent Maloy, as a deputy public defender appeared on his behalf on March 11.

On April 29, 2019, the district attorney filed an opposition to the petition.  The prosecution contended Maloy was ineligible for resentencing because he was convicted of first degree murder as a direct aider and abettor, and his conduct in "order[ing] his co-defendant to execute the victim as she was running away" showed his "intent to kill the victim."  The prosecution noted, "Although a natural and probable consequence jury instruction may have been given to the jury, a murder conviction based on that legal theory would have resulted in a conviction for *second degree murder* based on an *implied malice* theory.  However, that result did not occur in this case, meaning that the jury's verdict was not based on any natural and probable consequence jury instructions."[3]

---

[3]    The district attorney also argued section 1170.95 is unconstitutional.  The superior court did not reach that issue.  Nor do the parties raise it on appeal.  Numerous courts have held section 1170.95 to be constitutional.  (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 250-251; *People v. Lopez* (2020) 51 Cal.App.5th 589, 594.)

On April 30, 2019, the court granted defense counsel's request for more time to file his reply. On June 14, the public defender filed a reply to the district attorney's opposition. Counsel attached two jury instructions given at Maloy's trial: CALJIC Nos. 8.11 and 8.31. CALJIC No. 8.11 defined "malice," and explained it may be express or implied. The instruction states malice is implied when the killing resulted from an intentional act, "[t]he natural consequences of the act are dangerous to human life," and "[t]he act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." CALJIC No. 8.31 repeated these three elements in defining second degree murder.

Confusing felony murder with murder based on the natural and probable consequences doctrine, defense counsel argued "[t]here was no finding by the jury that James Maloy was a major participant in the attempted robbery in this case."[4]

The parties presented oral argument on July 10, 2019. The court observed it was clear Maloy was "not the actual shooter." The district attorney said the jury instructions Maloy cited—CALJIC Nos. 8.11 and 8.31—defined implied malice, and neither "deal[t] with the natural and probable consequence theory." The prosecutor continued, "I did not see anything in the jury instructions that would be analogous to a natural and probable consequence instruction either for a target offense or nontarget charge." The court stated, "It looks like the theory the People advanced was he was an aider and abettor and shared his intent to kill; and, in fact, encouraged the other person to do the shooting." In response to the prosecutor's argument that

---

[4]     Neither Maloy nor Briggs was charged with attempted robbery. Nor did the information or amended information allege any special circumstances.

"the fact that [Maloy] was convicted of a first as [opposed] to a second makes it legally impossible for the jury to have relied on that theory to come to a first," the court said, "that's how I was looking at it," adding, "There's no felony murder involved in this."

Citing CALJIC No. 8.11, defense counsel argued "the jury was effectively instructed on natural and the probable [*sic*] consequences theory." The court again explained that the instruction had to do with implied malice. Defense counsel said Maloy's family had delivered "the entirety of the appellate file" to the public defender's office and he had read it, including the instructions given to the jury. The prosecutor asked defense counsel, "Did it have any instruction that's analogous to what is now [CALCRIM Nos.] 402 and 403 for the natural and probable consequences?" Counsel answered, "It did not."

The court offered defense counsel an opportunity for additional briefing, but counsel declined. The court then ruled Maloy was ineligible for resentencing and denied his petition.

## DISCUSSION

To be eligible for resentencing under section 1170.95, Maloy must have been tried and convicted under either (1) the felony-murder rule or (2) the natural and probable consequences doctrine. (§ 1170.95, subd. (a); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 323, review granted Mar. 18, 2020, S260493; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166-1167.) He was not tried or convicted under either of these theories.[5]

As he did in the superior court, Maloy continues to confuse the reference to "[t]he natural consequences of [an intentional]

---

[5] While defense counsel in the superior court referred to attempted robbery and argued Maloy was not a "major participant," Maloy—correctly—does not contend on appeal that he was tried on a felony-murder theory.

6

act [being] dangerous to human life" in the definition of implied malice with the natural and probable consequences doctrine within the meaning of section 1170.95. Defense counsel conceded at the hearing that Maloy's jury was not given any instruction equivalent to CALCRIM Nos. 402 and 403, instructing the jury on any target crime on which murder based on a natural and probable consequences theory could be predicated.[6]

Our colleagues in the Sixth District have explained the difference between "natural consequences" as used in the definition of implied malice, and the natural and probable consequences doctrine. In *People v. Soto* (2020) 51 Cal.App.5th 1043, review granted Sept. 23, 2020, S263939, a jury had convicted Soto of second degree murder in 1996. In 2019, Soto petitioned for resentencing under section 1170.95. The trial court summarily denied the petition and the appellate court affirmed. The court concluded Soto had not made a prima facie showing that he was entitled to relief "because the jury instructions given at his trial conclusively demonstrate as a matter of law that he was not convicted of murder under a natural and probable consequences theory . . . ." (*Soto*, at p. 1059.)

Soto's jury was instructed with CALJIC Nos. 8.11 and 8.31, just as Maloy's jury was. (*Soto*, *supra*, 51 Cal.App.5th at p. 1049.) But "the trial court did not instruct the jury that Soto could be liable for [first or second degree murder] as the natural and probable consequence of the commission of another crime . . . ." (*Id.* at p. 1050.) The Court of Appeal stated the trial court, in ruling on Soto's resentencing petition, "could rely

---

[6] As we noted, Maloy attached to his 2009 writ petition the part of his trial transcript in which the court instructed the jury on the murder charge. The transcript does not reflect any instruction on the natural and probable consequences doctrine.

7

on the jury instructions, which are part of the record of conviction, in assessing the prima facie showings under section 1170.95(c)." The court concluded the jury instructions "on their face and as a matter of law" demonstrated Soto "was not and could not have been convicted of second degree murder under the natural and probable consequences doctrine," "because the jurors were not provided any instruction on which they could have found Soto guilty of murder under that doctrine. Rather, under the instructions, the jury necessarily found Soto culpable for murder based on his own actions and mental state as a direct aider and abettor of murder." (*Id*. at p. 1055.) The result here is precisely the same for precisely those reasons.

Soto's argument—like Maloy's here—"rest[ed] on a similarity in the language in the jury instructions related to implied malice to those explaining the natural and probable consequence doctrine." (*Soto*, *supra*, 51 Cal.App.5th at p. 1056.) The *Soto* court explained that, even though CALJIC Nos. 8.11 and 8.31

> "include similar language regarding a 'natural consequence,' they are distinctly different concepts. Implied malice is a mental state for the commission of the crime of second degree murder, either by the principal or as an aider and abettor (as was the case here for Soto) to murder. This distinction between direct aiding and abetting liability and natural and probable consequences doctrine is critical because potential relief under section 1170.95 extends only to those convicted of murder by operation of the natural and probable consequence doctrine or of felony murder. . . . Senate Bill No. 1437 changed the circumstances under

8

which a person could be convicted of murder without a showing of malice, but it did not exclude from liability persons convicted of murder for acting with implied malice. [Citation.]" (*Soto*, at pp. 1056-1057.)

The *Soto* court continued:

"For implied malice murder, [the requisite] intent is that the perpetrator ' "knows that his conduct endangers the life of another and . . . acts with conscious disregard for life." ' [Citation.] The 'physical component' required for implied malice murder 'is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." ' [Citation.] [¶] The natural and probable consequence doctrine, by contrast, is a theory of liability by which an aider and abettor who intends to aid a less serious crime can be convicted of a greater crime. This doctrine comes into play when 'an accomplice assists or encourages a confederate to commit one crime, and the confederate commits another, more serious crime (the nontarget offense).' [Citation.] Applying the natural and probable consequences doctrine, 'a defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the "natural and probable consequence" of the target crime.' [Citation.] Unlike aiding and abetting implied malice murder, which requires the aider and abettor

9

to (at least) share the mental state of the actual perpetrator of implied malice murder, ' "aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense [e.g., murder] because the nontarget offense was not intended at all." ' [Citation.]" (*Soto*, *supra*, 51 Cal.App.5th at p. 1058.)

In short, the superior court did not err in denying Maloy's petition for resentencing. (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899, review granted Aug. 12, 2020, S263219 [petitioner ineligible as a matter of law where jury not instructed on natural and probable consequences doctrine or felony-murder rule]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481 [although jury instructions included phrase "natural and probable consequences," petitioner ineligible because record of conviction showed he was not convicted of murder under the natural and probable consequences doctrine directed at accomplice liability]; *People v. Nguyen, supra,* 53 Cal.App.5th at p. 1157 [petitioner did not make requisite prima facie showing that he was convicted of murder under a natural and probable consequences theory].)

## DISPOSITION

We affirm the superior court's order denying James Warren Maloy's petition to vacate his murder conviction and for resentencing under section 1170.95.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


LAVIN, J.